# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| **GREGORY GREER,** | * |
| Plaintiff, | * |
| v. | *     Case No.: PWG-18-1193 |
| **GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC.,** | * |
| | * |
| Defendant. | |

* * * * * * * * * * * * * *

## MEMORANDUM OPINION AND ORDER

General Dynamics Information Technology, Inc. ("General Dynamics" or "GDIT") is a company that "provides information technology (IT), systems engineering, professional services and simulation and training to customers in the defense, federal civilian government, health, homeland security, intelligence, state and local government and commercial sectors." Second Am. Compl. ¶ 4.2, ECF No. 16.[1] General Dynamics employed Plaintiff Gregory Greer from September 2011 until he resigned in early 2015, *id.* ¶ 4.5, at which time Greer was working as a Senior Technical Editor on a General Dynamics contract at the Department of Research Programs within Walter Reed National Military Medical Center ("Walter Reed"), *id.* ¶ 4.7. In Greer's view, his resignation was constructive discharge because General Dynamics forced him to choose between resigning or working under the supervision of a federal employee, which he insists would have been a violation of a federal regulation, exposing him to criminal liability for conspiracy. He claims that, in the process of constructively discharging him, General Dynamics violated the

---

[1] For purposes of resolving Defendant's Motion to Dismiss, I accept Plaintiff's well-pleaded allegations as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).

Whistleblower Protection Act, 10 U.S.C. § 2409, and Executive Order 12829. Because he fails to state a claim under the federal statute or the Executive Order, despite having had the opportunity to amend to address his pleading deficiencies, I will grant General Dynamics's Motion to Dismiss, ECF No. 23,[2] and dismiss Greer's case with prejudice.

**Background**

Lisa Thompson, who is "a GS-12-level federal civilian employee," became Greer's supervisor in late February or early March 2015. Second Am. Compl. ¶¶ 4.9–4.10. He viewed her supervision as problematic because General Dynamics's "contract with the Department of Research programs" provides "that no one other than a GDIT employee could be Plaintiff's supervisor," and he raised this issue with his "Contracting Officer's Representative, Mr. Jeremy Nelson" on March 12, 2015. *Id.* ¶¶ 4.14–4.15. Ruben Acosta, Deputy Chief of the Department of Research Programs for the United States Navy, told Greer: "Either you work for [Thompson] or you can't work here anymore. Is that clear?" *Id.* ¶¶ 4.9, 4.11. In Greer's view, Acosta's statement "was a *per se* violation of Federal Acquisition Regulation (FAR) 7.503(d)(13). *Id.* ¶ 4.12.

Greer took March 16, 2015 off "to allow GDIT time" to comply with its contract. Second Am. Compl. ¶ 4.15. The next day, his supervisor at General Dynamics, Edith Druktenis, told him to attend a meeting with her and Erin Davis of General Dynamics's Human Resources Department instead of returning to work. *Id.* ¶¶ 4.16–4.17. General Dynamics's Vice President Julie McGrath also was present. *Id.* ¶ 4.21. Davis informed him that he could either return to work at Walter Reed "and be supervised by Ms. Thompson" or "resign from this position," in which case General

---

[2] The parties fully briefed the motion. ECF Nos. 23-1, 24, 25. A hearing is not necessary. *See* Loc. R. 105.6.

Dynamics would "place [him] in the Career Assistance Program" and "[f]ind [him] a new position in the company." *Id.* ¶ 4.20.

Greer "signed the necessary resignation paperwork from his position at Walter Reed" because he believed that to return to Walter Reed "and be supervised by Ms. Thompson . . . would have forced him to conspire and collude with GDIT in a conspiracy to violate the Federal Acquisition Regulations." *Id.* ¶ 4.22. Asserting that he did not "want[] to give up his employment with GDIT," he explains that he signed the paperwork "based on Ms. Davis' promise to find Plaintiff a new position within GDIT" and his understanding that resignation "was a condition precedent to continued employment by GDIT." *Id.* ¶¶ 4.23–4.26.

Greer was not offered a new position with General Dynamics despite "appl[ying] to well over 100 new positions within GDIT." Second Am. Compl. ¶ 4.29. He claims that, between May 2012 and September 2013, while he was working "on a GDIT contract at the Defense Centers of Excellence for Psychological Health and Traumatic Brain Injury," *id.* ¶ 4.6, General Dynamics "had erroneously informed Plaintiff (through email communication to his GDIT supervisor) that the security clearance GDIT had sponsored Plaintiff for was a Public Trust clearance when in fact the clearance was a Secret clearance." *Id.* ¶ 4.30. He claims that, after he resigned, this misinformation hindered his acquisition of a new position because "the most valuable opportunities Defendant had for Plaintiff were those with the Secret clearance requirement, which Defendant concealed from Plaintiff." *Id.* ¶ 4.27. Once he knew that he had the higher clearance, he claims, he "was immediately able to secure a Secret-level position with a very sophisticated DOD agency working on Secret-level material at a salary exactly one-third higher than his last position at GDIT." *Id.* ¶ 4.37. He claims that not knowing about his clearance prevented him from earning "five years' worth of advanced-level employment" at a higher salary. *Id.* ¶ 4.39.

3

Greer lodges two claims against General Dynamics. Second Am. Compl. ¶ 5; *see also* Compl., ECF No. 1; Am. Compl., ECF No. 3. First, he claims that "Defendant constructively terminated Plaintiff after Plaintiff made protected disclosures under 10 U.S.C. § 2409(c)(2)," the Defense Contractor Whistleblower Protection Act ("WPA"), that is, he disclosed "that a federal civilian employee had been appointed Plaintiff's supervisor, in violation of FAR 7.503(d)(13). Second Am. Compl. ¶ 5.1.1. He views his resignation as constructive discharge because "further employment by GDIT would [have] require[d] the Plaintiff to conspire and collude with GDIT to violate Federal Acquisition Regulations." *Id.* He alleges that the Department of Defense ("DOD") Office of Inspector General ("OIG") investigated his allegations and "confirmed that Plaintiff had made four legitimate protected-basis claims pursuant to 10 U.S.C. § 2409(c)(2)." Second Am. Compl. ¶ 4.24. Second, he claims that General Dynamics "intentionally and maliciously concealed from Plaintiff Plaintiff's true security clearance level for which Defendant had sponsored Plaintiff and then failed to debrief Plaintiff after Plaintiff's employment separation, in violation of Executive Order 12829 – National Industrial Security Program." *Id.* ¶ 5.1.2.

General Dynamics filed a motion to dismiss Plaintiff's Amended Complaint, after which I held a conference call, permitted Greer to file another amended complaint to address the deficiencies General Dynamics perceived in his pleadings, and found the initial motion to dismiss to be moot. ECF Nos. 8, 15, 17. Greer filed his Second Amended Complaint, and General Dynamics filed the Motion to Dismiss that now is pending, ECF No. 23.

## Standard of Review

General Dynamics argues that Greer has not stated a claim against it. Def.'s Mem. 1. Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB–12–237, 2012 WL

6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

## Discussion

### Whistleblower Claim

> [W]histleblowing involves "the making of a protected disclosure." 5 C.F.R. § 1209.4(b). Federal law prohibits certain agency actions in response to receiving such disclosures from whistleblowers. *See* 5 U.S.C. § 2302. Relevant here, a federal agency cannot take—or fail to take—"a personnel action" due to
>
>> any disclosure of information by an employee . . . which the employee . . . reasonably believes evidences
>>
>> (i) any violation of any law, rule, or regulation . . . .
>
> 5 U.S.C. § 2302(b)(8). As part of these safeguards, an agency cannot fire an employee for making a protected disclosure. *See* 5 U.S.C. § 2302(a).

*Flynn v. United States Sec. & Exch. Comm'n*, 877 F.3d 200, 203–04 (4th Cir. 2017) (footnote omitted). The elements of a whistleblower claim are:

> "(1) the acting official has the authority to take, recommend, or approve any personnel action; (2) the aggrieved employee made a protected disclosure; (3) the

5

acting official used his authority to take, or refuse to take, a personnel action against the aggrieved employee; and (4) the protected disclosure was a contributing factor in the agency's personnel action."

*Id.* at 204 (quoting *Chambers v. Dep't of Interior*, 602 F.3d 1370, 1376 (Fed. Cir. 2010)).

Here, General Dynamics does not challenge its official's authority to terminate Greer's employment. Assuming for the sake of argument that Greer reasonably believed that a federal employee's supervision of him was in violation of the law, such that he made a protected disclosure, I will turn to whether his resignation was indeed a constructive discharge. *Flynn*, 877 F.3d at 204.

"Constructive discharge occurs when an employer deliberatively makes an employee's working conditions intolerable and thereby forces him to quit his job." *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 244 (4th Cir. 1997) (internal quotation marks and citations omitted). The employee must prove that the employer acted deliberately and that his working conditions were intolerable. *Id.* The Court considers "'the objective perspective of a reasonable person'" in determining "whether an employment environment is intolerable." *Lacasse v. Didlake, Inc.*, 712 F. App'x 231, 239 (4th Cir. 2018) (quoting *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006)).

Greer alleges that his working conditions were intolerable because working under the supervision of Thompson, a federal employee, "would [have] require[d] the Plaintiff to conspire and collude with GDIT to violate Federal Acquisition Regulations," specifically FAR 7.503(d)(13). Second Am. Compl. ¶ 5.1.1. Section 7.503 provides:

(a) Contracts shall not be used for the performance of inherently governmental functions.

. . .
(d) The following is a list of examples of functions generally not considered to be inherently governmental functions. However, certain services and actions that are not considered to be inherently governmental functions may approach being in that

> category because of the nature of the function, the manner in which the contractor performs the contract, or the manner in which the Government administers contractor performance. . . .
> . . .
> (13) Contractors participating in any situation where it might be assumed that they are agency employees or representatives.

*See* https://www.acquisition.gov/content/7503-policy (GSA website).

Greer argues that "[e]nforcement of and compliance with the Federal Acquisition Regulations is a legitimate government function," and "[i]f two or more people agree to take an action that will obstruct a legitimate government function that agreement is a conspiracy and violation of 18 U.S.C. § 371." Pl.'s Opp'n ¶¶ 1.4–1.5. I cannot discern from Greer's pleadings (or his Opposition to General Dynamics's Motion to Dismiss), however, how Thompson's supervision of him violated FAR 7.503(d)(13), nor how he would have been conspiring to violate this regulation by reporting to Thompson.[3] Thus, he has not alleged a forced "conspiracy" that would create intolerable working conditions.

Certainly, his allegations suggest that Thompson's supervision of him may have been a breach of General Dynamics's "contract with the Department of Research programs," which, according to Plaintiff, provides "that no one other than a GDIT employee could be Plaintiff's supervisor." Second Am. Compl. ¶ 4.15. And, it is plausible that an employee could be displeased with and even uncomfortable with a supervisory situation contrary to his employer's government contract. But, those circumstances, albeit undesirable, simply do not rise to the level of intolerable when they do not affect the propriety of the employee's (as opposed to the company's or agency's) actions. *See U.S. Equal Employment Opportunity Comm'n v. MVM, Inc.*, No. TDC-17-2864, 2018 WL 2197727, at *12 (D. Md. May 14, 2018) ("Constructive discharge claims are held to a high

---

[3] This, of course, also begs the question whether Greer's disclosure was protected, for it would not be protected if the supervision was not in violation of the law.

standard, and even truly awful working conditions may not rise to the level of constructive discharge." (quoting *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 783 (D. Md. 2010))). Thus, Greer could have chosen to continue to work under Thompson's supervision; he was not forced to resign. Consequently, he has not alleged a constructive discharge. *See Munday*, 126 F.3d at 244. Therefore, he has not alleged a personnel action to state a claim for violation of the Whistleblower Protection Act. *See Flynn*, 877 F.3d at 204.

Executive Order 12829 Claim

General Dynamics contends that "Plaintiff's claim under Executive Order 12829 fails because that document does not create a private right of action." Def.'s Mem. 12. Indeed, "a cause of action is a set of facts which would justify judgment for the plaintiff under some recognized legal theory of relief." Paul Mark Sandler & James K. Archibald, *Pleading Causes of Action in Maryland* 2 (MICPEL 4th ed. 2008); *see Pepper v. Johns Hopkins Hosp.*, 680 A.2d 532, 542 (Md. Ct. Spec. App. 1996), *aff'd*, 697 A.2d 1358 (Md. 1997).

In his claim for a violation of Executive Order 12829, Greer has not identified either a statutory or a common law theory of relief that this Court recognizes. As General Dynamics explains,

> Signed by President George H.W. Bush on January 6, 1993, Executive Order 12829 established a National Industrial Security Program in order to "safeguard classified information that may be released or has been released to current, prospective, or former contractors, licensees, or grantees of United States agencies." Exec. Order No. 12829 § 101(a), 58 Fed. Reg. 3479 (Jan. 8, 1993). That Order calls for the publication of a National Industrial Security Program Operating Manual ("NISPOM") prescribing "specific requirements, restrictions, and other safeguards that are necessary to preclude unauthorized disclosure and control authorized disclosure of classified information to contractors, licensees, or grantees." *Id.* § 201(a).

Def.'s Mem. 12. And, Greer appears to concede as much, stating in his Opposition that his "complaint concerning the defendant's failure to inform him of his security level is *damnum absque injuria*," Pl.'s Opp'n ¶ 3.1.4, that is, "[l]oss or harm for which there is no legal remedy," *damnum sine injuria*, Black's Law Dictionary (7th ed. 2000) (noting that the phrase is "[a]lso termed *damnum absque injuria*").

Thus, it is undisputed that no cause of action exists in this Court for a violation of Executive Order 12829. Therefore, Greer has not pleaded facts for which this Court could provide relief, if he were to prevail on the merits. As Greer has no cause of action for a violation of Executive Order 12829, *see* Sandler & Archibald, *supra*, at 1, this claim must be dismissed. *See* Fed. R. Civ. P. 12(b)(6).

Additionally, when a plaintiff has had the opportunity to amend in response to a defendant's identification of pleading deficiencies but still fails to state a claim, as Greer has here, dismissal with prejudice is appropriate because another opportunity to amend would be futile. *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013). Accordingly, dismissal of Greer's claims with prejudice is appropriate. *See id.*

## **ORDER**

Accordingly, it is, this <u>21st</u> day of <u>February</u>, <u>2019</u>, hereby ORDERED that

1. Defendant's Motion to Dismiss, ECF No. 23, IS GRANTED;

2. Plaintiff's Complaint IS DISMISSED WITH PREJUDICE; and

3. The Clerk SHALL CLOSE this case.

/S/
Paul W. Grimm
United States District Judge

lyb